UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GWANJUN KIM,

           Plaintiff,

Case No. 1:11-cv-233

Hon. Robert J. Jonker

v.

GRAND VALLEY STATE UNIVERSITY,
*et al.*,

           Defendants.
                                      /

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action in which plaintiff has alleged that defendants discriminated against him in violation of 42 U.S.C. § 2000d (Title VI) and 42 U.S.C. § 1983. This matter is now before the court on defendants' motion to dismiss (docket no. 62).

    **I.**    **Plaintiff's claims**

In his amended complaint, plaintiff has named three institutional defendants: Grand Valley State University (GVSU); GVSU College of Education; and GVSU College of Community and Public Service (collectively referred to as the "GVSU defendants"). In addition, plaintiff has named six individual defendants: Thomas J. Haas (President of GVSU); Elaine C. Collins (Dean of the GVSU College of Education); Dr. Paula Lancaster (Chair of the GVSU College of Education); Olivia A. Williams (Assistant Professor); George Grant (Dean of the GVSU College of Community and Public Service); and Lois Smith Owens (member of the professional staff of the GVSU College of Community and Public Service) (collectively referred to as the "individual defendants").

Plaintiff's Amended Complaint is a lengthy document which is difficult to understand. After sifting through plaintiff's extensive commentary this lawsuit boils down to two events: plaintiff's attempt to change grades of "incomplete" which he received in two classes and his unsuccessful attempt to be re-admitted as a student at GVSU. Plaintiff's allegations are summarized as follows.

Plaintiff was dismissed from the GVSU College of Education on or before July 16, 2010. Amend. Compl at ¶ 11.a.; Exh. 2.[1] Thomas Owens, GVSU College of Education's Director of Student Information and Services Center, informed plaintiff that he could appeal his dismissal at the end of 2010. *Id.* At that time, plaintiff had grades of "incomplete" in two classes, ED [sometimes referred to as "EDG"] 635 and ED 672. Amend. Compl. at ¶ 11.c. and Exhs. 3, 7. These "incomplete" grades were the result of plaintiff's failure to timely turn in assigned papers, which he later submitted on November 15, 2010. Amend. Compl. at ¶ 11.d. and 11.e.; Exh. 4.

On December 6, 2010, plaintiff was informed that resolution of his two "incomplete" grades would be helpful for the processing of his request for readmission to the university. Amend. Compl. at ¶ 11.c.; Exh. 3. A week later, plaintiff sent an e-mail to Assistant Professor Williams (the teacher who had assigned the incomplete grades), requested that she assign grades to plaintiff's late papers and post them as soon as possible. Amend. Compl. at ¶ 11.d.; Exh. 4. Assistant Professor Williams contacted plaintiff and informed him that she would grade his papers and submit the course grades by January 11, 2011. Amend. Compl. at ¶ 11.f; Exh. 6. On or about January 10, 2011,

---

[1] Plaintiff's amended complaint relies on the exhibits attached to his original complaint. *See* Compl. (docket no. 1). The court will refer to those exhibits as "Exh. __." The exhibits are docketed as follows: docket no. 1-1 (Exhs. 1-6); docket no. 1-2 (Exhs. 7-12); and docket no. 1-3 (Exhs. 13-19).

Williams submitted the required forms to change plaintiff's grades in ED 635 and ED 672 from an "incomplete" in each course to a "C" in each course. Amend. Compl. at ¶ 12.h.;Exh. 7.

On January 14, 2011, Mr. Owens informed plaintiff via e-mail that his second request for readmission to the GVSU College of Education was denied based upon plaintiff's "very low GPA." Amend. Compl. at ¶ 12.i; Exh. 8. On January 20, 2011, plaintiff e-mailed Assistant Professor Williams disputing the calculation of his grades and threatening to sue her:

> Hello again
>
> First, I can not accept your deal B- on Ed 672 because I cannot trust your continue mistake and/or dishonesty [sic].
>
> I would like to appeal the ED 672 final paper grades to another professor that 214 out of 400 point [sic]. Your mistake is one time is enough [sic].
>
> Second, You do not remember you said that 2 final paper is final [sic]. I can also proof [sic]: email from you.
>
> This is final letter to you as a Notice intend [sic] to lawsuit Federal Court.

*See* Exh. 10.

Shortly thereafter, plaintiff took steps to appeal the grades assigned to him in ED 635 and ED 672. *See* Exh. 15. In response to plaintiff's appeal, Dr. Lancaster reviewed plaintiff's tardy research papers and his disputed grades and invited him to discuss the issues raised with Assistant Professor Williams. *Id.* Plaintiff met with Dean Collins and Dr. Lancaster on February 1, 2011. Amend. Compl. at ¶ 8.b . During that meeting, Dean Collins advised plaintiff that she would reconsider admission into the GVSU's College of Education and that as part of that process, plaintiff needed to meet with a program advisor (Dr. Diarrassouba). *Id.* and Exh. 18. On February 10, 2011, Dean Collins sent plaintiff an e-mail denying plaintiff's request for readmission. The e-mail provided in pertinent part as follows:

3

> Dear Mr. Kim:
>
> I have considered the evidence presented at our last meeting and will not be reinstating you to the COE [College of Education]. Mr. Tom Owens stated that he shared this information with you early this morning. In response to the message that you sent Dr. Lancaster, I am concerned that you continue to cast blame on COE personnel, rather than take responsibility for your performance in Dr. Williams' course. I am sorry that you lost your TAA and TRA benefits, but do not agree that COE actions have resulted in your current situation.
>
> Since you have exhausted all avenues of appeal within the COE, I ask that you refrain from contacting COE personnel about your current status. I appreciate your compliance with this request.

Exh. 18.

On February 14, 2011, Dr. Lancaster confirmed the decision of the GVSU College of Education with regard to plaintiff's appeal of the grades on his two late papers:

> Dear Mr. Kim,
>
> I have completed my work on your grade appeals. Per your request, faculty members within the College of Education have independently evaluated your compare and contrast paper from EDG 635 and your research paper from ED 672. On the paper for EDG 635, you received a D and 162 points. On the paper for ED 672, you received a grade of F and 200 points. Your final grades will reflect these scores.

Exh. 19.

Based on these actions, plaintiff alleged that defendants violated his rights under Title VI and § 1983. With respect to § 1983, plaintiff attempts to allege violations of the Equal Protection Clause. First, plaintiff alleges that Assistant Professor Williams miscalculated plaintiff's grades because plaintiff is Korean. Amend. Compl. at ¶¶ 5.c., 6, and 6.e. Second, plaintiff alleges that defendants denied him readmission to GVSU and refused to change his grades because of plaintiff's sexual orientation (i.e., he is not gay) and his race (i.e., he is not a white person, a black person, or a Muslim). Amend. Compl. at ¶¶ 28, 34, 35. With respect to the Title VI claim, plaintiff claims

4

that defendants discriminated against him on the ground of race, color or national origin, because he is Korean. *Id.* at ¶¶ 3 - 13. Plaintiff seeks money damages against defendants and also appears to seek injunctive relief in the form of this court re-calculating his grades in ED 635 and ED 672. Amend. Compl. at p. 16. Although it is not entirely clear from the complaint, plaintiff may also be seeking an injunction ordering his readmission to GVSU.

### II. Defendants' motion to dismiss

#### A. Legal Standard

Defendants have moved to dismiss plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

5

In resolving motions to dismiss, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, there are limits to the court's "liberal construction" of a *pro se* complaint. For example, the court cannot rewrite a complaint to include claims that were never presented, "conjure up unpled allegations" or "create a claim." *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). "[T]to hold otherwise would require the court 'to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.' *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985)." *Id.*

### B. Plaintiff's § 1983 claims

#### 1. The GVSU defendants

The GVSU defendants contend that they are immune from suit under the Eleventh Amendment. The court agrees. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend XI. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Missouri v. Fiske*, 290 U.S. 18, 27 (1933) ("[e]xpressly applying to suits in equity as well as at law, the Amendment necessarily

6

embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State"); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993) . GVSU is a state institution of higher education and successor to Grand Valley State College, having a "board of control" appointed by the governor. *See* M.C.L. §§ 390.841-846. As the successor to Grand Valley State College, GVSU is a state entity which the state legislature supports through appropriations. *See* Mich. Const. Art. 8, § 4 ("The legislature shall appropriate moneys to maintain the University of Michigan, Michigan State University, Wayne State University, Eastern Michigan University, Michigan College of Science and Technology, Central Michigan University, Northern Michigan University, Western Michigan University, Ferris Institute, Grand Valley State College, by whatever names such institutions may hereafter be known, and other institutions of higher education established by law"). As a state institution of higher education, GVSU is entitled to Eleventh Amendment immunity. *See,e.g., Hill v. Board of Trustees of Michigan State University*, 182 F. Supp. 2d 621, 625 (W.D. Mich 2001) (holding the Michigan State University, which the state legislature supports through appropriations under Mich. Const. Art. 8, § 4, is an arm of the state and immune from suit under the Eleventh Amendment, "whether th action is for damages or injunctive relief"); *Javetz v. Board of Control, Grand Valley State University*, 903 F. Supp. 1181, 1186 (W.D. Mich. 1995) (noting that the plaintiff acknowledged that GVSU was an arm or instrumentality of the State of Michigan and that the Eleventh Amendment bars suit against it under 42 U.S.C. § 1983); *An-Ti Chai v. Michigan Technological University*, 493 F. Supp. 1137, 1163-64 (W.D. Mich. 1980) (concluding that Michigan Technological University "is an agent of the State empowered under the Eleventh Amendment to invoke sovereign immunity").

Accordingly, the GVSU defendants are entitled to dismissal on the § 1983 claim on grounds of Eleventh Amendment immunity.

### 2. The individual defendants

#### a. Eleventh Amendment immunity

The individual defendants contend that they are entitled to Eleventh Amendment immunity because plaintiff has sued them in their official capacities. It is well established that a plaintiff's claim for monetary damages against a state employee in his or her official capacity is barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities").

A threshold issue for the court in this case is whether plaintiff is suing defendants in their individual or official capacity. Plaintiff did not clearly state whether he is suing the individual defendants in their official or individual capacities. When there is no explicit statement in a § 1983 proceeding as to whether the plaintiff is suing particular defendants in their official or individual capacities, the Sixth Circuit applies a "course of proceedings test" to determine whether the defendants received notice of the plaintiff's intent to hold them liable in their individual capacities. *See Beil v. Lake Erie Correction Records Department*, 282 Fed. Appx. 363, 367 (6th Cir. 2008).

> The "course of proceedings" test considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. The test also considers whether subsequent pleadings put the defendant on notice of the capacity in which he or she is sued.

8

*Moore v. City of Harrimann*, 272 F.3d 769, 772 at fn. 2 (6th Cir. 2001) (*en banc*). In this regard, "[a]ll a [§ 1983] complaint need do is afford the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 772 (internal quotation marks omitted).

In his amended complaint, plaintiff stated that he "has right to equal protection to the laws" which has been violated by the actions of President Haas, Dean Collins, Dr. Lancaster and Dean Grant "in their individual capacities." Amend. Compl. at ¶ 28. Plaintiff also refers to Dr. Williams and Mr. Owens , apparently as the employees supervised by Haas, Collins, Lancaster and Grant. *Id.* While plaintiff refers to the individual defendants as "state actors," it appears that he did so to meet the requirement under § 1983 that they were acting under color of state law. *Id.* at ¶¶ 14-22. Plaintiff also seeks monetary damages against the individual defendants. *Id.* at p. 17. In applying the "course of proceedings test," the court concludes that the individual defendants had fair notice that plaintiff's § 1983 claim was directed against them in their individual capacities rather than their official capacities. Accordingly, defendants' motion to dismiss is denied to the extent it seeks Eleventh Amendment immunity with respect to plaintiff's § 1983 claim for monetary damages against the individual defendants.

      **b.**     **Failure to state a claim**

Plaintiff claims that defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." Amend. Compl. at ¶ 28.; U.S. Const. Amend . XIV. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metropolitan Sewer District*, 922 F.2d 332, 341 (6th Cir. 1990). "To state an equal protection

claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal quotation marks omitted).

Here, plaintiff has failed to state an equal protection claim. While plaintiff has alleged that defendants discriminated against him because he is Korean and "not gay," he has not pled any facts which "state a claim to relief that is plausible on its face" under the Equal Protection Clause. *See Iqbal*, 129 S.Ct. at 1949. Plaintiff admits that he did not complete his course work in two classes, that the professor allowed him to submit late papers, that the professor graded the papers and that she subsequently assigned plaintiff a "C" in each class. Plaintiff's work was reviewed by other members of the GVSU staff and the grades upheld on appeal. In addition, plaintiff's pleadings refer to an e-mail from GVSU staff stating that plaintiff was not readmitted to the university because of "very low grades." Plaintiff does not allege any facts which connect his status as a Korean who is "not gay" to the calculation of his grades or to defendants' refusal to readmit him to the university. "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). A pleading that offers only "labels and conclusion" or "naked assertion[s] devoid of further factual enhancement" are insufficient. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id. See, e.g., Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. Appx 935, 937-38 (11th Cir. 2011) (where plaintiff's civil rights complaint for discrimination related to a home loan

alleged that she was black, was pre-qualified for a loan, that the terms of the loan changed through the application process, and that she was ultimately rejected for the loan after her lawyer told her that the terms were improper, the trial court properly dismissed the complaint because nothing in her complaint raised "a plausible inference" that the bank discriminated against the plaintiff based on her race; the plaintiff's allegations of race discriminate were too conclusory and insufficient under the *Twombly* and *Iqbal* pleading standard to survive a motion to dismiss). Accordingly, defendants motion to dismiss should be granted as to plaintiff's claims against the individual defendants.

### c. Qualified Immunity

The individual defendants also move to dismiss on grounds of qualified immunity.

> Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009).

*Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011).

The Supreme Court has set forth a two step test for determining qualified immunity.

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (internal citations omitted). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand." *Id.* at 236.  For the reasons discussed in § II.B.2.b., *supra*, plaintiff has failed to satisfy the first prong of the qualified immunity analysis, because there was no constitutional violation.  Accordingly, defendants are also entitled to dismissal on the ground of qualified immunity.

### C. Plaintiff's Title VI claims

Plaintiff has alleged that defendants violated his rights under Title VI of the Civil Rights Act of 1964 provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  For purposes of Title VI:

> the term "program or activity" and the term "program" mean all of the operations of
> . . .
> (2)(A) a college, university, or other postsecondary institution, or a public system of higher education . . .

42 U.S.C.  § 2000d-4a(2)(A).

#### 1. The individual defendants are not proper defendants

While the GVSU defendants meet the definition of a "program" under 42 U.S.C. § 2000d-4a(2)(A), the individual defendants do not meet that definition and are not subject to liability under Title VI.  "The proper defendant in a Title VI case is an entity rather than an individual." *Farm Labor Organizing Committee v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 741 (N.D. Ohio 2000).  "It is beyond question. . . that individuals are not liable under Title VI." *Shotz v. City of Plantation, Florida*, 344 F.3d 1161, 1171 (11th Cir. 2003).  *See also, Whitfield v. Notre Dame Middle School*, 412 Fed. Appx. 517, 521 (3rd Cir. 2011) ("[i]ndividual liability may not be asserted under Title VI"); *Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1356 (6th Cir. 1996)

(noting that the plaintiffs' Title VI claims failed because she asserted the claims against the individual officers involved an incident that occurred at a school "and not against the school, the entity allegedly receiving financial assistance"). Accordingly, plaintiff's Title VI claim against the individual defendants should be dismissed.

### 2. Plaintiff has failed to allege a Title VI claim against the GVSU defendants

It is undisputed that the GVSU defendants receive federal financial assistance. Defendants' Brief at p. 11. The issue before the court is whether plaintiff has alleged that the GVSU defendants violated Title VI, by discriminating against him "on the ground of race, color or national origin." *See* 42 U.S.C. § 2000d.

To state a cause of action under Title VI, a plaintiff must demonstrate a discriminatory act and causation:

> Plaintiff can prove his case of intentional discrimination by showing direct evidence of racial discrimination or establishing a prima facie case. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992). Direct evidence of discrimination usually requires a clear assertion that the plaintiff was treated adversely based on his race. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998). To establish a prima facie case of discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse action; and (4) a causal connection between the plaintiff's protected status and the adverse action. *See Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995). Under either approach, a plaintiff must show some discriminatory act and causation. *See Peters v. Jenney*, 327 F.3d 307, 321 n. 15 (4th Cir.2003) (stating that the *McDonnell Douglas* framework does not alter the elements of a Title VI claim, only the manner in which a plaintiff can prove causation).

*Caulker v. Michigan State University*, 1:09-cv-125, 2009 WL 3644778 at *5 (W.D. Mich. Nov. 2, 2009) (footnote omitted).

Here, plaintiff's amended complaint fails to state a claim under Title VI because it fails to allege an act of discrimination that is "plausible on its face." *See Iqbal*, 129 S.Ct. at 1949.

13

Specifically, plaintiff's amended complaint fails to allege a causal connection between his protected status (i.e., Korean national origin) and the adverse actions (i.e., the "C" grades in the two classes and defendants' failure to re-admit him to the university). Plaintiff amended complaint consists of a conclusory allegation that the GVSU defendants took these adverse actions against him because he is Korean. The pleadings and attached materials indicate that plaintiff did not complete the assigned course work, demanded and then received consideration of untimely course work, received grades which other members of the faculty reviewed, and that he was not re-admitted to the university due to his low grades. These pleadings and attached materials are insufficient to allow the court to draw a reasonable inference that defendants took the alleged adverse actions against plaintiff because he was of Korean national origin. Rather, a reasonable inference to be drawn from the pleadings and attached materials is that plaintiff had a history of poor academic performance and did not complete his assigned course work in a timely fashion. Accordingly, the GVSU defendants' motion to dismiss the Title VI claim should be granted.

### V.     Recommendation

Accordingly, I respectfully recommend that defendants' motion to dismiss (docket no. 62) be **GRANTED** and that this case be **DISMISSED**.

Dated:  February 2, 2012                                            /s/ Hugh W. Brenneman, Jr.
                                                                                         HUGH W. BRENNEMAN, JR.
                                                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).